MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

STEPHEN G. CORRIGAN (MABN 100560)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3701
    Facsimile: (510) 637-3724
    E-Mail: stephen.corrigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND  DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | No.  CR 09-01062 PJH |
|      Plaintiff,           ) | |
|      v.                   ) | UNITED STATES' SENTENCING MEMORANDUM |
| DARNELL THOMAS,        ) | |
|      Defendant.      ) | |

INTRODUCTION

      Defendant Darnell Thomas is scheduled to be sentenced on November 1, 2012, at 2:30 p.m. for his plea of guilty on July 10, 2012, to Count One of the Indictment charging the conspiracy to commit wire fraud.  The parties have entered into a plea agreement that includes an adjusted offense level 22, a reduction of defendant's Criminal History Category from III to I, and a binding sentence of no greater than 41 months custody.  The Sentencing Guidelines calculations in the Presentence Report reflects an adjusted offense level is 22, a Category III Criminal History, and a Sentencing Guidelines custody range of 51 to 63 months.  The Probation Officer however, recommends a variance from this range to a sentence of 41 months custody.

UNITED STATES' SENTENCING MEMORANDUM
CR 09-01062 PJH

For the reasons stated below, the government also recommends a sentence of 41 months custody, a three year term of supervised release, restitution in the amount of $1,549,902, and a $100 special assessment.

### FACTS

Thomas is one of seven defendants charged in a massive mortgage fraud scheme that began prior to 2004 and continued through 2007. The scheme involved the fraudulent purchase of approximately 130 properties located in the Northern and Eastern District of California. As reflected in the Indictment, in furtherance of the conspiracy, the defendants and their associates recruited and controlled individuals in key positions, including straw buyers, real estate appraisers, notaries, and escrow officers, in order to limit the defendants' exposure to criminal liability and to maximize the defendants' financial gains.

The scheme involved the purchase of properties in the names of straw buyers and at times in the name of fictitious identities created by the defendants. Straw buyers were paid thousands by recruiters such as the defendant and falsely informed that they would not be held financially responsible and that shortly after the properties were purchased, the properties would be transferred out of their names.

The defendants profited from the fraudulent purchases by falsely reporting to lenders the agreed upon purchase prices, and applying for and receiving 100% financing based upon the inflated purchase prices, which provided the defendants an immediate profit from the sale of the properties through the distribution by the escrow officer of the amounts financed above the purchase prices; profits that often exceed $100,000 per property. Additionally, beyond making the first couple mortgage payments, designed to prevent lenders from immediately foreclosing on the properties, the defendants thereafter routinely failed to make mortgage payments yet often rented the properties until the lenders ultimately foreclosed on the properties.

The defendants directed straw buyers to sign mortgage loan applications that contained false information and false supporting documentation, including that: (1) the property would be the straw buyers' primary residences; (2) the identities and telephone numbers of the straw buyers' employers, (3) the straw buyers' finances, including monthly incomes and bank account

UNITED STATES' SENTENCING MEMORANDUM
CR 09-01062 PJH                              2

information, (4) the straw buyers' addresses and telephone numbers, and (5) letters represented to have been composed and signed by a certified public accountant.

Thomas played a critical role in the fraudulent scheme and was paid well for his efforts. For his involvement in the criminal enterprise, Thomas received $979,575, $737,575 in checks made payable in his name and $242,000 in checks made payable in the name of Ivan Utsey. From these payments, Thomas made payments to straw buyers and mortgage companies.

Besides Thomas' role as a recruiter of straw buyers, in furtherance of the conspiracy, Thomas provided fictitious names and straw buyers names to another person to establish good credit scores, thereby allowing the conspirators to apply for and receive loans to purchase properties using straw buyers and fictitious identities. Additionally, Thomas purchased two houses based upon fraudulent loan applications, one in the name of Ivan Utsey and one in his own name. Thomas made no mortgage payments and the houses were ultimately foreclosed and sold, causing losses to the lenders.

Based upon Thomas' direct involvement in the submission of fraudulent loan applications on 6 properties in 2005 and 2006, all of which were foreclosed due to the failure to make mortgage payments, the lenders sustained losses totaling $1,549,902.

## PLEA AGREEMENT

The written plea agreement contains Sentencing Guidelines' calculations that result in an adjusted offense level 22 based upon a loss amount greater than $1,000,000 and less than $2,500,000, a two level increase for more than 10 victims, and a three level decrease for early acceptance of responsibility. The parties further agreed that notwithstanding a Criminal History that results in 5 points and a Category III (PSR at ¶ 59), Thomas' Criminal History may be over-represented and accordingly should be deemed to be a Criminal History Category I, thereby reducing Thomas' potential custody range from 51 to 63 months to 41 to 51 months based upon a Criminal History Category I. Further, the parties agreed that a reasonable and appropriate sentence was not more than 41 months custody, 3 years supervised release, $100 special assessment, no fine, and an amount of restitution to be determined by the Court. *See*, Plea Agreement at ¶ 7.

**PRESENTENCE INVESTIGATIVE REPORT**

The PSR differs from the Guidelines' calculations contained in the Plea Agreement only insofar as the Criminal History Category, which was determined to be a Category III, providing for a custody range of 51 to 63 months.  However, the Probation Officer recommends a downward variance to a sentence of 41 months custody, three years supervised release, restitution of $1,549,902, and a $100 special assessment.  In recommending the variance to 41 months, the Probation Officer agrees that Thomas' criminal history, which includes two prior felony drug convictions that are more than 20 years old, and a real estate fraud conviction, may be overstated. In further support of the 41 month recommendation, the Probation Officer notes that Thomas is married with children, appears to be a responsible father, and has the support of his wife. *See* PSR at Sentencing Recommendation.

**GOVERNMENT'S RECOMMENDATION**

The government concurs with the Probation Officer's sentencing recommendation.   The plea agreement was tailored to allow Thomas to receive a sentence below the applicable range of 51 to 63 months.  The government recommends a sentence of 41 months, the low end of the range of 41 to 51 months, in recognition that Thomas'  prior criminal conduct occurred more than 20 years ago, and that he now has a more stable lifestyle since his involvement in the charged offenses.

However, any sentence below 41 months would not serve the purposes outlined in 18 U.S.C. § 3553(a), including the need for sentence to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a).  Thomas willingly and knowingly participated in a wide-scale fraud scheme designed to victimize unsophisticated straw buyers and unknowing financial institutions.  Thomas' criminal conduct occurred over a two or three year period and caused irreparable financial harm to the straw buyers promised by Thomas and others that the purchases would not impact them financially.   These straw buyers now find themselves saddled with substantial debts to financial institutions and poor credit scores.   This outcome was a given, since the defendants created a scheme designed to pay the defendants up front and Thomas and

1   his co-defendants had no motivation to keep the loans current, knowing the straw buyers would

2   be held accountable.  Moreover, the $1,549,902 loss amount ascribed to Thomas is limited to six

3   properties, notwithstanding payments to Thomas of almost $1,000,000, and the potential for

4   losses of tens of millions should Thomas be held accountable for all reasonably foreseeable acts

5   of others in furtherance of the jointly undertaken criminal activity.  U.S.S.G. § 1B1.3(a)(1)(B).

6                                   **CONCLUSION**

7            For the reasons stated, the government recommends that the Court sentence defendant

8   Darnell Thomas to a term of imprisonment of 41 months, three years supervised release,

9   restitution of $1,549,902, and a $100 special assessment.

10

11                                              Respectfully submitted,

12                                              MELINDA HAAG
                                                United States Attorney
13

14
    Dated: November 1, 2012                            /s/
15                                              _____
                                                STEPHEN G. CORRIGAN
16                                              Assistant United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28